LAWRENCE J. HILTON (SBN 156524)
lhilton@onellp.com
PAUL Y. FENG (SBN 146889)
pfeng@onellp.com
ONE LLP
4000 MacArthur Boulevard
East Tower Ste. 500
Newport Beach, California 92660
Telephone:   (949) 502-2870
Facsimile:   (949) 258-5081

Attorneys for Plaintiffs
WOONG SIK IM and JUNG MI PARK

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WOONG SIK IM, an individual, and JUNG MI PARK, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>BYOUNG DAN PARK, an individual and DOES 1 through 5, inclusive,<br><br>Defendants. | Case No. 8:20-cv-2048<br><br>**COMPLAINT FOR:**<br><br>**(1) VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934 AND RULE 10b-5;**<br><br>**(2) VIOLATIONS OF CAL. CORP. CODE §§ 25401 AND 25501;**<br><br>**(3) COMMON LAW FRAUD AND RESCISSION**<br><br>**DEMAND FOR JURY TRIAL** |

For their claims against Defendants BYOUNG DAN PARK and DOES 1 through 5, inclusive, Plaintiffs WOONG SIK IM and JUNG MI PARK (sometimes collectively referred to as "Plaintiffs") allege as follows:

## JURISDICTION AND VENUE

1.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. section 1331 and 15 U.S.C. section 78aa.  The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the Federal claims that they form part

of the same controversy and derive from a common nucleus of operative facts. Venue is proper in this District under 28 U.S.C. section 1391(b) in that a substantial part of the events giving rise to the claims asserted herein took place within this District, including the sale of the securities that are the subject matter of this Action.

## THE PARTIES

2. Plaintiff WOONG SIK IM ("Wilson") is an individual residing in the County of Orange, State of California.

3. Plaintiff JUNG MI PARK ("Jung") is an individual residing in the County of Orange, State of California. At all times relevant herein, Jung was and is Wilson's wife.

4. Plaintiffs are informed and believes and, on that basis, allege that Defendant BYOUNG DAN PARK ("Park") is an individual residing in the County of Orange, State of California. Plaintiffs are further informed and believe and, on that basis, allege that Park was the owner of 100% of the shares of PBSU Inc., a California corporation ("PBSU") at the time of transactions set forth below.

## GENERAL ALLEGATIONS

5. Wilson first met Park in 2016. Wilson purchased a frozen yogurt business owned by Park that was operating in South Bay Mall in Redondo Beach, California.

6. On May 26, 2018, Park met with Plaintiffs at the Starbucks located at Michaelson Drive and Culver Drive in Irvine, California. During the meeting, Park discussed PBSU with Plaintiffs, which Park represented to be the owner a Prinkipia Frozen Yogurt shop located in the Valley Plaza Mall in Bakersfield, California. According to Park, PBSU was also planning to open a Squiz Up smoothie shop, also at the Valley Plaza Mall in Bakersfield.

7. Park told Plaintiffs that he needed help with the PBSU business, because he suffered from asthma and could not make the two to three-hour drive to Bakersfield to properly manage the stores. Wilson offered to help Park by agreeing

to travel to Bakersfield to manage the PBSU stores, but Park insisted that Plaintiffs make an investment in PBSU in order to have more of a stake in the operations.

8. At the meeting on May 26, 2018, Park represented to Plaintiffs that the Prinkipia store was earning profits in excess of $13,000 per month and that Plaintiffs would receive distributions on the profits generated by the Prinkipia store based on their investment percentages. Park never made any mention of existing or imminent defaults under the lease in place for the Prinkipia store at the Valley Plaza Mall in Bakersfield.

9. Park further represented that the Squiz Up store to be opened at the Valley Plaza Mall in Bakersfield would generate profits similar to the profits actually being generated from his then-existing location in Culver City, which Park represented to be in excess of $13,000 per month. Plaintiffs are informed and believe and, on that basis, allege that Park knew when he made the representations that Plaintiffs would never be paid the actual and expected profits he represented to Plaintiffs, and that Plaintiffs would never be provided with documentation sufficient to determine their share of the profits. Park repeated these representations in subsequent telephone conversations and in KakaoTalk instant messages.

10. Based on the representations of Park described above, Plaintiffs agreed to invest in PBSU.

11. On July 16, 2018, Plaintiffs and Park (in his individual capacity) signed a written agreement (the "Investment Agreement") providing that (1) Wilson would acquire ten percent (10%) of the shares in PBSU in exchange for payment to Park in the amount of $99,446.00; (2) Jung would acquire an additional ten percent (10%) of the shares in PBSU in exchange for payment to Park in the amount of $99,446.00; and (3) Park would retain ownership of the remaining eighty percent 80% of the shares in PBSU.

12. On July 18, 2018, Plaintiffs tendered the purchase price for the PBSU shares. Park continued to control PBSU, and Plaintiffs are informed and believe

and, on that basis, allege that all of the purchase price paid by Plaintiffs for the PBSU shares was immediately transferred to Park or to individuals or entities under his control.

13. After Plaintiffs paid the purchase price for their shares in PBSU, Wilson began managing the Bakersfield stores. Wilson maintained the books for the stores and estimated that the monthly profits in 2018 were approximately $12,000 and the monthly profits in 2019 were approximately $11,000. However, Wilson could not determine the precise amount of profits, because he did not have all of the relevant expense information. Plaintiffs made multiple requests to Park that he provide actual profit and loss reports for the stores and also requested that Park instruct PBSU to make payments to Plaintiffs for their respective shares of the profits.

14. Despite their requests, neither Park nor PBSU ever provided the requested profit and loss reports, and Plaintiffs never received any payments from PBSU for their shares of PBSU's profits.

15. In early December of 2018, while Wilson was at the Prinkipia store in Bakersfield, a letter from The Byrne Law Office in Calabasas, California was hand-delivered at the store. Wilson learned at that time that the Prinkipia lease was in default and had been in default for several months, with accrued arrearages of $52,989.82. Plaintiffs are informed and believe, and, on that basis, Park was aware that the Prinkipia lease was in default or that a default was imminent at the time he induced Plaintiffs to invest in PBSU.

16. In November 2019, Plaintiffs demanded that Park return the amount of their investments (collectively $198,892) by the end of 2019, and they would relinquish any interest they held in PBSU. Park initially agreed to return Plaintiffs' money, but claimed that he needed to first sell the stores and that he would return the money in early 2020.

///

17. In January 2020, Park claimed that both of the stores in Bakersfield had closed and that he could not return Plaintiffs' money. Plaintiffs made several additional attempts to resolve the dispute, but Park would not respond.

## FIRST CLAIM FOR RELIEF

## (Violation of Securities Exchange Act of 1934 and Rule 10b-5)

18. Plaintiffs reallege and incorporate herein by this reference as though set forth in full each and every allegation contained in Paragraphs 1 through 17, inclusive.

19. In reliance on the representations of Park about the profitability of the Prinkipia and Squiz Up stores, and that Plaintiffs would receive distributions of the profit based on their investment share percentages, Plaintiffs entered into the Investment Agreement and paid the $198,892 purchase price for shares in PBSU.

20. Unbeknownst to Plaintiffs, although the stores were profitable, Park had no intention of making any profit distributions to Plaintiffs, and in fact Park was taking actions without Plaintiffs' knowledge that caused the Prinkipia store to be in imminent danger of losing its lease at the Valley Plaza Mall.

21. Park misrepresented the amount of actual and expected profits that Plaintiffs could expect to receive from the Prinkipia and Squiz Up stores and concealed from Plaintiffs his knowledge that the Prinkipia lease was in default or that default was imminent.

22. Park made the misrepresentations and concealments of material facts with the intention, and for the purpose, of inducing Plaintiffs to purchase the shares in PBSU, and Plaintiffs did, in fact, rely on the misrepresentations and concealments of material facts in deciding to purchase the PBSU shares.

23. Park's misrepresentations and concealments were material in that a reasonable investor would have considered the facts that were the subject of the misrepresentations and concealments to be important in deciding whether to purchase the PBSU shares.

24. As a direct and proximate result of the misrepresentations and concealments of material facts by Park, Plaintiffs suffered damages in that they each paid the sum of $99,446 (for a cumulative total of $198,892) in exchange for the PBSU shares.

25. To the extent the sale of the PBSU shares is deemed to have been directly from PBSU, Inc. rather than from Park, Plaintiffs allege that at the time of the acts and omissions alleged herein, Park directly performed and controlled the acts and omissions of PBSU. Park is therefore jointly and severally liable for such acts and omissions pursuant to 15 U.S.C. § 78t(a) and 17 C.F.R. § 240.10b-5.

## SECOND CLAIM FOR RELIEF

### (Violation of California Corporations Code §§ 25401, 25501)

26. Plaintiffs reallege and incorporate herein by this reference as though set forth in full each and every allegation contained in Paragraphs 1 through 25, inclusive.

27. In performing the acts alleged in the sale of the PBSU shares, which acts took place in the State of California, Park violated Sections 25401 and 25501 of the California Corporations Code by offering or selling a security in the State of California by means of written and oral communications that included untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

28. The misrepresentation by Park about the actual and expected profits from the Bakersfield stores, and Park's concealment of the actual or imminent defaults under the Prinkipia lease at the Valley Plaza Mall were material in that a reasonable investor would never have purchased the PBSU shares had the true facts been known.

/ / /

29. As a direct and proximate result of the misrepresentations and concealment of material facts by Park, Plaintiffs have suffered damages in an amount to be proved at trial, including the $198,892 paid for the PBSU shares.

30. Plaintiffs justifiably relied on the misrepresentations and omissions of Park by, among other things, executing the Investment Agreement and paying the purchase price for the PBSU shares.

31. The misrepresentations and concealments alleged above were made directly by Park, who controlled PBSU at the time of the misrepresentations and concealment. Park is therefore jointly and severally liable for such acts and omissions pursuant to Section 25504 of the California Corporations Code.

## THIRD CLAIM FOR RELIEF

### (Fraud and Rescission)

32. Plaintiffs reallege and incorporate herein by this reference as though set forth in full each and every allegation contained in Paragraphs 1 through 31, inclusive.

33. On or about May 26, 2018, Park made the representations set forth in Paragraphs 6 through 9 above to Plaintiffs about the profitability of the Bakersfield stores and the profitability of an investment in PBSU.

34. The representations made by the Park were in fact false. The true facts were that Park knew that the expected profits from the Bakersfield stores were less, and Park had no intention of ever paying any profit distributions to Plaintiffs.

35. Park also concealed from Plaintiffs his knowledge that the lease for the Prinkipia store at the Valley Plaza Mall in Bakersfield was either in default or a default was imminent.

36. When Park made these representations and concealments, he knew them to be false and made these representations and concealments with the intention to deceive and defraud Plaintiffs and to induce Plaintiff to act in reliance on these representations by purchasing the PBSU shares.

37. Plaintiffs, at the time these representations and concealments were made by Park, were ignorant of the falsity of Park's representations and believed them to be true. Plaintiffs also were ignorant of the material facts that were suppressed by Park.

38. In reliance on Park's representations and concealments, Plaintiffs were induced to and did execute the Investment Agreement and pay the cumulative sum of $198,892 for the PBSU shares. Had Plaintiffs known the actual facts, they would not have taken such actions. Plaintiffs' reliance on Park's representations was justified, because they had a pre-existing business relationship with Plaintiff and had never previously been aware of any dishonest behavior by Park.

39. As a direct and proximate result of the misrepresentations and concealment of material facts by Park, Plaintiffs have suffered damages in an amount to be proved at trial, including the $198,892 paid for the PBSU shares.

40. Plaintiffs justifiably relied on the misrepresentations and omissions of Park by, among other things, executing the Investment Agreement and paying the purchase price for the PBSU shares.

41. The aforementioned conduct of Park was an intentional misrepresentation, deceit, or concealment of a material fact known to Park with the intention on the part of Park of thereby depriving Plaintiffs of property or legal rights or otherwise causing injury, and was despicable conduct that subjected the Plaintiffs to a cruel and unjust hardship in conscious disregard of the Plaintiff's rights, so as to justify an award of exemplary and punitive damages.

42. Plaintiffs intend service of the summons and complaint in this action to serve as notice of rescission of the Investment Agreement, and hereby demand that Park restore to Plaintiffs the consideration furnished by Plaintiffs, specifically the sum of $198,892, along with prejudgment interest from and after July 18, 2018.

///

# **PRAYER**

WHEREFORE, Plaintiffs pray for relief as set forth below.

1. On the First and Second Claims for Relief, for an award of compensatory damages according to proof;

2. On the Third Claim for Relief, for rescission of the Investment Agreement, restitution of the amounts paid to Park by Plaintiffs for the PBSU shares, and for punitive and exemplary damages in an amount to be proved at trial;

3. For an award of prejudgment interest;

4. For an award of reasonable attorneys' fees and costs as allowed by law; and

5. Such other and further relief as the Court deems just and proper.

DATED: October 23, 2020              ONE LLP

By: */s/ Lawrence J. Hilton*
    Lawrence J. Hilton
    Paul Y. Feng

Attorneys for Plaintiffs
WOONG SIK IM and JUNG MI PARK

# DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a jury trial on all issues triable to a jury.

DATED: October 23, 2020            ONE LLP

By: */s/ Lawrence J. Hilton*
    Lawrence J. Hilton
    Paul Y. Feng

Attorneys for Plaintiffs
WOONG SIK IM and JUNG MI PARK